WM. H. BOWEN, Plaintiff in Error, *v.* WM. HIXON, Defendant in Error.

1. *Election — Contest — Count of votes, final — Term of notice — Mode of contest in certain case by quo warranto.* — Within eight days after an election, the county clerk, under the statute touching elections (Wagn. Stat. 569, § 25), proceeded to cast up the votes, and gave a certificate of election to A. Afterward, B. giving notice that he would contest the election, he made a second count and gave a certificate to B. Within twenty days after the second count, but more than twenty days after the first, A. also gave notice that he would contest the election. *Held,* 1st, that the duty of the clerk was simply ministerial, and when finished was wholly performed, and that the second count of votes and award of certificates was invalid and null; *a fortiori,* if made after the eight days had expired, and the matter had been removed by notice of contest to the Circuit Court; 2d, that the requirements of the statute concerning twenty days' notice (Wagn. Stat. 573, § 52) was imperative, and that the notice was insufficient, not having been given within twenty days from the first count; 3d, that the proper remedy in such case is by *quo warranto* in the Circuit Court.

*Error to First District Court.*

*Ewing & Smith*, for plaintiff in error.

*Johnson & Budd*, for defendant in error

I. A notice to contest the office of county clerk must be made within twenty days after the official count of the votes cast for such office has been made. (Gen. Stat. 1855, ch. 2, § 52 ; Castello v. St. Louis Circuit Court, 28 Mo. 259 ; Wilson v. Lucas, 43 Mo. 290.)

II. The first count made within eight days after the election was the official count, and after that count was made the board of canvassers was *functus officio*, and the second count was utterly void. (Gen. Stat. 1855, ch. 2, § 5 ; Ingerson v. Berry, 14 Ohio St. 321 ; People *ex rel.* Bailey v. The Supervisors of Greene, 12 Barb. 217 ; State *ex rel.* Attorney-General v. Hixon, 41 Mo. 210.)

III. Notwithstanding Hixon held by virtue of a certificate and commission derived from proceedings which were in themselves void, still he has a *prima facie* right to the office, and is entitled to hold under his commission until ousted by the government, or a better title is shown in accordance with the requirements of law. The fact that Bowen could not know until more than twenty days after the official count that it was necessary to contest can not change the positive provision of the statute. (Wilson v. Lucas, 43 Mo. 290.)

IV. Notwithstanding Bowen's right to contest the election was defeated by the means and time of Hixon's getting possession of the office, still he had his remedy by an information in the nature of a *quo warranto* at his relation.

BLISS, Judge, delivered the opinion of the court.

At the general election of 1866, plaintiff and defendant were candidates for the office of county clerk. The record shows that within eight days after the election the county clerk, taking to his assistance two justices of the County Court, proceeded to examine and cast up the votes given for the candidates, and gave

a certificate of election to the plaintiff, Bowen. Within twenty days from this official count, Hixon gave him notice that he would contest his election; and it appears that on the 24th of December, after the twenty days had expired, and before the session of the County Court where the contest was to be had, the clerk, again taking to his aid two justices of the County Court, made another canvass, and gave a certificate to defendant, Hixon, who received a commission from the governor and took possession of the office. The plaintiff then gave defendant notice that at the next term of the County Court he would contest his right to the place, which notice was served on the 4th of January, 1867, over fifty days after the first, and some ten days after the second count. At the session of the County Court the defendant moved to dismiss the proceedings for want of proper notice, which motion was overruled, whereupon he suffered judgment and appealed to the Circuit Court, where the same motion was again overruled, and he appealed to the District Court. The latter court reversed the judgment, and the case is brought here upon error.

It is impossible to understand some of these preliminary proceedings. The record fails to throw any light upon their inducement or the circumstances surrounding them; but it is presumed that this is but a chapter of the same controversy considered in some of its aspects in State v. Hixon, and State v. Bowen, 41 Mo. 210–21. The questions we are called upon to decide are purely technical, and their decision must be governed by views long settled and universally acquiesced in. After the first canvass, and the election returns had been regularly and lawfully made, it seems there was an attempt to make a new one, and that the governor's commission was issued to the person declared to be elected on this second canvass. The notice required by the statute was made within twenty days of the second count of the votes, though more than twenty from the first; and we must first consider which was the official count referred to in the statute. Section 52 of the chapter of elections (Wagn. Stat. 573) provides that "no election of any county officer shall be contested unless legal notice of such contest be given in writing to the opposite party within twenty days after the votes shall be officially

counted." The official count referred to is provided for by section
25 of the same chapter, which declares that "the clerk of each
county shall, within eight days after the close of each election,
take to his assistance two justices of the peace of his county, or
two justices of the County Court, and examine and cast up the
votes of each candidate, and give to those having the highest
number of votes a certificate of election." It does not appear
that the first count, had within the eight days after the election,
was not in all respects regular and lawful, and the question then
arises whether there could be any other count, and, if one were
attempted, whether it had any force or validity. We have no
hesitation in saying that it was altogether invalid. When this
duty of the clerk was fully performed, it was performed once
and forever, and could never be repeated. To suppose that it
could be renewed—that the canvass of one day could be repeated
the next, and counter certificates be issued to different contestants
as new light or influence was brought to bear upon the mind of
the clerk—would render the whole proceeding a farce. It is simply
a plain ministerial duty of the clerk, aided by the two magistrates,
requiring sufficient knowledge of arithmetic and moral honesty to
count correctly, and clerical ability to make the certificate.
When finished, the whole duty is performed, never to be repeated.
That the clerk and justices might adjourn, if necessary, for one
or more days before completing the count, need not be disputed;
but after it is completed and certificates are issued the work
is finished and the board is dissolved. The People v. Super-
visors of Greene, 12 Barb. 217, was an application for a *man-
damus* against defendants, as the board of canvassers, command-
ing them to reassemble and correct their estimate of the votes cast
at a certain election, wherein the relator was candidate for county
judge, by counting the votes of a rejected precinct. The court
refused the peremptory writ upon the ground mainly that the
board could not reassemble. Says the court: "That board met
on the Tuesday following the election, and organized according
to law. It then proceeded, though illegally and improperly, as is
alleged, to estimate the votes of the county, and to make the
statements prescribed by statute. * * * The board has dis-

solved. Were the same individuals again to convene, they would not again constitute the board of county canvassers. No statute authorizes such assembling, or prescribes its mode of organization. * * * When the board deposited with the county clerk the result of its canvass, and declared who were elected to office, and published that result and determination, all its powers were expended."

But if the county clerk had the right to recount the votes at all, he certainly could not do so after the expiration of the eight days limited by the statute, and after the matter had been removed by notice of contest to the County Court. The second canvass was a nullity, and the certificate under it wholly unauthorized. The " official count," then, referred to in the requirement as to the time of notice, was the count made under the statute within eight days of the election.

It is admitted that the notice of the intended contest was given more than twenty days after this official count, and the question arises whether this requirement in regard to time is peremptory or may be enlarged. It has always been held that where the jurisdiction of a court is made to depend upon the time either of giving notice or of taking appeals, the requirement is peremptory. And in construing the statute under consideration, this court has ruled, in Castello v. St. Louis Circuit Court, 28 Mo. 278, that " the fifty-fifth section of the election law (same as § 52, Wagn. Stat.) provides that a legal notice in every contested election of a county officer must be given within twenty days after the official count. This is the longest period allowed for such notices. It may be requisite to give them before the lapse of twenty days, but they can not be deferred beyond that period in any case." Wilson v. Lucas, 43 Mo. 290, was a contest of an election to the office of circuit judge, the statute requiring forty days' notice. The petition was dismissed because that requirement had not been observed. This question is too well settled, both upon principle and authority, to admit of doubt, and the action of the County and Circuit Courts in refusing to dismiss the case for want of notice was clearly erroneous.

The contestant complains that inasmuch as the contestee took

possession of the office more than twenty days after the official count, he is by this construction cut off from the right of appeal. It may be so, but not from his remedy. ·An information in the nature of a *quo warranto* in the Circuit Court, upon the relation of the contestant, would have brought up the whole matter. Such proceedings are not favored where a contest under the statute can be had, but in a case like the present it is the appropriate remedy. The governor's commission, though giving the· holder a right to the office until judicially ousted, would be no bar to a full investigation of the rights of the parties.

The other judges concurring, the judgment of the District Court is affirmed.