GILLESPIE, RESPONDENT, *v.* DION, APPELLANT.

[Submitted April 7, 1896.   Decided May 4, 1896.]

18   183
18   198
18   365
19   284

ELECTIONS—*Special proceeding—Jurisdictional facts.*—An election contest authorized by section 1043, Fifth Division of the Compiled Statutes, being a special proceeding, the jurisdictional facts must appear on the face of the proceedings, and therefore, where the statute permits a contest to be instituted only by an elector, the omission of the contestant to show by averment on the face of the record that he is an elector, is fatal.

SAME—*Statement of contest.—Amendment.*—In an election contest instituted under section 1043, Fifth Division of the Compiled Statutes, where the contestant's statement failed to state a jurisdictional fact, no amendment offered or made after the lapse of the ten days allowed by the statute for instituting the contest could cure the defect or give the court jurisdiction to act.

SAME—*Sufficiency of statement—Amendment.*—Under section 1043, Fifth Division of the Compiled Statutes, requiring the contestant to file, within ten days thereafter, a statement specifying the grounds of contest, a statement merely alleging that marked ballots were voted and counted in a certain precinct, and that owing to confusion at the time the votes were counted, mistakes were made, and which failed to state that the contestant was a candidate for the office in question, or that any one of the ballots were unlawfully marked, or the nature of the alleged mistakes, or that they affected the result, or the number of votes cast at that precinct, or that any electors were prevented from voting by fraud or other misconduct, is insufficient. A statement so defective cannot be cured by amendment after the time allowed by law for commencing proceedings has expired. (*Heyfron* v. *Mahoney*, 9 Mont. 497, cited.)

*Appeal from Seventh Judicial District, Dawson County.*

ELECTION CONTEST.    Judgment was rendered by MILBURN, J., declaring the election void as to both parties.    Reversed.

Statement of the case by the justice delivering the opinion.

The plaintiff, Gillespie, seeks to contest the election of Henry Dion, the defendant and contestee, to the office of county treasurer for Dawson county. On November 21, 1894, the plaintiff commenced this proceeding, by filing the following paper with the county clerk of Dawson county :

"State of Montana, County of Dawson—ss. :   To James McCormick, County Clerk of Dawson County, Montana :   At a meeting of the board of canvassers of Dawson county, held at Glendive, on the 12th day of November, 1894, Henry Dion was declared elected to the office of treasurer of said county. Now, therefore, I notify you that I will contest the said election at the next meeting of the district court of the Seventh judicial district, state of Montana, on the following grounds : (1) That marked ballots were voted and counted at said election in said county in the precinct in Glendive, and that, owing to the noise and confusion existing at the time the votes in said precinct were being counted, many mistakes occurred; and, from information received, it is my firm belief that, if said votes were recounted, it would result in showing a majority for me, sufficiently large to have elected me, instead of Henry Dion; and I will respectfully ask the court to order a recount of the votes cast in said precinct.   (2) That the poll books from Redwater precinct, in said county, do not show that the judges and clerks were sworn when canvassed by the canvassing board of said county, as required by law.   [Signed]   Alex. S. Gillespie.

"State of Montana, County of Dawson—ss. :   I, Alexander S. Gillespie, having read the foregoing affidavit, solemnly swear that the said affidavit is true, and, as to those matters therein stated on the information and belief, that I believe them to be true.   [Signed]   Alex. S. Gillespie.

"Sworn to and subscribed before me, this 21st day of No-

vember, 1894.    James McCormick, County Clerk and Clerk
of the Board of County Commissioners.    [Seal of Dawson
County, Montana.]"

On the same day, the county clerk and the clerk of the
board of county commissioners of Dawson county issued the
following notice :

"State of Montana, County of Dawson—ss. ¿   To Henry
Dion, Contestant :   Take notice that you are hereby required
to appear on the first day of the next term of the district court
of the Seventh judicial district in and for the county of Daw-
son, to be held at Glendive, in said county, at which time and
place all grounds of contest of your election at the last gen-
eral election held in said county, November the 6th, A. D.
1894, as treasurer of the said county of Dawson, specified in
the statement hereto annexed, will be brought before the said
court for trial.    Witness my hand and the seal of Dawson
county, this 21st day of November, A. D. 1894.    James Mc-
Cormick, County Clerk and Clerk of the Board of County
Commissioners.    [Seal.]"

The record shows that on November 21, 1894, the sheriff
personally served the writ or statement by delivering a true
copy to the defendant.    On December 17, 1894, the papers
were filed in the district court.    On January 28, 1895, the de-
fendant filed a motion to quash the statement.    This motion
was very specific.    It alleged that the statement was insuffi-
cient to give the court jurisdiction to hear and determine any
contest whatever, or at all, and did not state facts sufficient to
warrant the relief prayed for, or any relief, in that it did not
show :   (1) That A. S. Gillespie is an elector of the county of
Dawson, or state of Montana; or that he was a nominee for
the office of treasurer for Dawson county.    (2) In that it
failed to show that Gillespie had any interest whatever in the
contest, or that said Gillespie would be benefited in any way
whatever, or at all, if a hearing was had or instituted by the
court under said notice.    (3) In that the statement failed to
show the number of ballots that were marked and voted in
Glendive precinct, and failed to show that any distinguishing

mark was upon said ballots other than that provided for in sections 23 and 24 of "An act providing for printing and distributing ballots at the public expense, and to regulate voting at territorial and other elections," approved March 13, 1889. (4) In that the statement failed to show how the ballots were marked, or whether the same was a distinguishing mark thereon, so that the same could be identified or was identified; and further failed to show that such ballots were marked with a view to identify them, or that any electors or nominees were prejudiced by marks placed thereon; and further failed to show that the marks upon any ballot were prejudicial in any way to said Gillespie. (5) In that the statement failed to show that the judges of election of Glendive precinct committed any mistakes or errors in canvassing the vote of said precinct; and further failed to show what act done and performed by them constituted a mistake. (6) In that the statement failed to show that there was any noise or confusion made or existing at Glendive precinct when the vote was being counted. (7) In that the statement failed to show that any vote or votes were counted for Henry Dion, as treasurer for Dawson county, by the judges of election of Glendive precinct, or any precinct in Dawson county, which were not cast for him; and further failed to show that any illegal vote or votes were canvassed or counted for Henry Dion, as treasurer for Dawson county, in any precinct in Dawson county. (8) In that the said statement failed to show that the judges and clerks who counted and canvassed the votes of Redwater precinct were not sworn in fact.

This motion was denied by the court. The defendant excepted.

On February 4, 1895, the plaintiff filed an "amended notice and grounds of contest." To support his motion for leave to file the amendment, plaintiff filed an affidavit to the effect that the facts set forth in his amended notice concerning two precincts, to wit, Tokna and Newlon, were not known to him at the time he filed and served his original notice of contest, on November 21, 1894, although he had used and exercised all possible diligence to discover the same.

The amended paper, after setting forth that the defendant herein, Henry Dion, was declared elected to the office of treasurer at a meeting of the board of canvassers of Dawson county, held at Glendive, county seat, on November 12, 1894, proceeded by notifying said Henry Dion that he (Gillespie) would contest the election of said Dion as treasurer of said county, at the next approaching meeting of the district court, upon the following grounds. The grounds set forth specified that Gillespie is, and at all times mentioned in the notice was, an elector and citizen and resident of Dawson county, and that, at the last election held in the said county, he was a candidate for county treasurer, for which office he had been regularly and duly nominated. Then followed specifications to the effect that, owing to the noise and confusion while the clerks were keeping the tally of the votes cast at said election, it was impossible for said clerks to make correct and accurate tallies of the names announced as being voted for; and that, at the end of the counting, there were discrepancies in the two tally lists by the two clerks, of five or six votes; and that certain ballots had private marks put upon them, for the purpose of distinguishing said ballots; and that, in another precinct, certain votes were counted for Dion and for this affiant, when in reality there ought to have been more counted for affiant than were actually counted for him; and that the defendant was declared elected by a majority of three over plaintiff, whereas, if the ballots cast at certain specified precincts could be recounted and correctly counted, instead of a majority of votes being found for Dion, a majority would be found for Gillespie. The prayer was for a recount under the direction and order of the court, and that Gillespie be by the court duly declared elected county treasurer.

Dion's counsel opposed the motion for leave to file this amended notice and grounds of contest, and excepted to the order of the court permitting the same to be filed. Dion then filed a demurrer, raising the question of jurisdiction and other general and specific objections, based particularly upon the ground that the statements in relation to the alleged discrep-

ancies and marks upon the tallies and the ballot were not suf-
ficiently specific.

On May 7, 1895, Gillespie filed certain "proposed amend-
ments to the complaint." These amendments were substan-
tially additional specific averments concerning the tally lists of
the votes cast and polled in the Glendive precinct, wherein it
appeared that by the tally kept by one James M. Rhoades, who
had been a candidate at said election for the office of assessor,
Gillespie had a majority of at least six instead of three votes
for county treasurer in Glendive precinct. There was another
averment concerning the number of votes at Newlon precinct.
Accompanying these amendments, Gillespie filed his affidavit
to the effect that he never knew anything about these matters
in detail until the time when he filed his application to amend.
The court granted this leave, whereupon Gillespie filed his
"second amended complaint and notice of contest." This sec-
ond amended complaint and notice of contest was a very ample
statement of all original and amended grounds of contest, as
heretofore substantially set forth.

Dion moved to strike out this second amended complaint
and notice of contest, upon the ground that permission of the
court had not been received or granted to file such a document,
and that no complaint had ever been filed in the case, and that
the document was an original pleading, and not an amended
one. On May 14, 1895, the court denied Dion's motion, to
which order Dion duly excepted. Dion then filed a demurrer
to the second amended complaint and notice of contest, against
raising the question of jurisdiction over the person of said
Henry Dion or the subject of action, and again setting forth
in full the grounds upon wh'ch he relied, and which were sub-
stantially those set forth to the prior amended statement. On
August 27, 1895, Dion moved to strike out the first and sec-
ond amended statements or complaints and notices of contest,
because the same were not properly filed and served in ac-
cordance with section 1043, Fifth Division, General Laws
(Compiled Statutes, 1887), and because each constituted an en-
tirely new cause of action, and was barred under section
1043.

The court denied these motions, and allowed the defendant twenty days to answer. Exceptions were preserved. Dion filed an answer to the original notice and grounds of contest, denying all averments of Gillespie's original notice and grounds of contest, to the effect that there were mistakes, and, if a recount were had, a majority would be found large enough to elect Gillespie instead of Dion. Dion also denied all the grounds of contest in the amended notice and grounds of contest, expressly saving his exceptions to the rulings of the court in allowing the contestant to file an amended notice and grounds of contest. He also denied the averments of the second amended complaint or statement specifically.

A trial was had to the court. The court found that neither Dion nor Gillespie had a legal majority, and that the election certificate issued to Henry Dion should be, and was, annulled and declared void. Dion appeals to the supreme court from the decision of the court declaring the office vacant by reason of a tie vote, and from the orders refusing to quash Gillespie's statement, and to strike out the second amended notice of contest from the rulings of the court on the demurrer.

Two ballots which were before the court appear in the record, but, as the decision only pertains to the jurisdictional question in the case, it is unnecessary to set forth more fully what occurred on the trial before the court. No point being made in the court upon the second ground of the original statement, that the poll books from Redwater precinct did not show that the judges and clerks were sworn, that question is eliminated from the case

*T. C. Holmes, Henri J. Haskell,* and *Ella Knowles Haskell,* for Appellant.

The statement filed by contestant with the county clerk did not specify any grounds of contest, as required by Section 1043, Fifth Division Compiled Statutes. It merely states that marked ballots were voted and counted at said election in said county in the precinct of Glendive, and that many mistakes occurred. This is not a statement of any ground of contest.

(Mechem on Public Officers, § 224, 226; Paine on Elections, § 825; *Smith* v. *Harris*, 32 Pac. 617; McCreary on Elections, § 400, 405; *Lehlback* v. *Hayes*, 23 Atl. 422; *Soper* v. *Commissioners*, 48 N. W. 1112.) The statement is fatally defective and insufficient to confer jurisdiction for the further reason that it does not appear therefrom that Gillespie is a person (an elector) authorized by Sections 1043 of the Fifth Division Compiled Statutes to contest the election of the defendant Dion. (Mechem's Public Office and Officers, § 215; McCrary on Elections, § 399; *Blanck* v. *Pausch*, 113 Ill. 60.) The court not having jurisdiction, could not of course, authorize Gillespie to file "an amended notice and ground of contest," (6 Am. & Eng. Ency. of Law, page 407,) or make any lawful order in the premises except to dismiss the case for want of jurisdiction.

If a contest be authorized, the mode of contest and of trial will rest absolutely in the legislative discretion. (Paine on Elections, § 793.) The requirements of the statute are jurisdictional. *Albee* v. *May*, 8 Black, (Ind.) 310; Payne on Elec- § 809.) And no act of the parties can confer it. (*Bores* v. *Kolors*, 23 Minn. 445. When the law prescribes a mode of deciding cases of contested elections, designed to be final, the courts have no authority to adjudicate such cases other than that which the law confers upon them. (Paine on Elections, § 793. *Wright* v. *Fawchette*, 42 Tex. 203; *Lindsay* v. *Sackett*, 20 Tex. 516; *Wright* v. *Fawchett*, 42 Tex. 203; *Schwartz* v. *County Committee*, 23 Pac. 84; *Vailes* v. *Brown*, 27 Pac. 945.) If the time for filing the petition or notice has passed, and the original notice (statement) was not sufficient to confer jurisdiction, it cannot be acquired by an amendment setting up new matter. (6 Am. & Eng. Ency. of Law, 407; *Batterton* v. *Fuller*, (S. D.) 60 N. Y. 1071; *Anderson* v. *Mayers*, 50 Cal. 525.

*Strevell & Porter*, for Respondent.

HUNT, J.—This proceeding is special in its character, author-

ized by Section 1043, Fifth Division, Compiled Statutes of Montana. The statute, ungrammatical as it is, is as follows:

"All contests of county and township officers shall be tried in the proper county, and when an elector shall wish to contest such an election he shall file with the clerk of the board of county commissioners, within ten days after such person shall have been declared elected, a statement in writing, specifying the grounds of contest, verified by affidavit, and such clerk shall issue to the contestant a notice to appear at the time and place specified in the notice, before the district court, which notice, with a copy of such statement, shall be delivered to the sheriff, who shall within five days, serve the same upon the contestor by delivering tohim a copy of such notice and statement, or by leaving such copy at his usual place of residence. That in all contested election cases, or rights thereto, existing, or which may hereafter occur, when the said notice shall not have been served orgiven in compliance therewith, the same shall be a bar to any and all persons making such contests, and all actions and rights of action thereto." The words contestant and contestor plainly should be contestee.

The consideration of the jurisdiction of a court to hear and determine matters in litigation being one which presents itself in *limine,* we will therefore examine this question raised by appellant. (*Chadwick* v. *Chadwick,* 6 Mont. 566.)

The power of the court to hear and determine the matter, and to render the judgment rendered, is regulated by the terms of the statutes (sections 1043 ·and 1044) alone. The court is, therefore, limited to the exercise of express powers conferred. If a case was not presented by the contestant which brought the power of the district court into action, then there was no jurisdiction, and the contestee's motion to quash should have been sustained.

That election contests, at least prior to the adoption of the Codes, were special, and meant to be of a summary nature, is evident by the procedure laid down. The method of their commencement was by a statement and notice in the county clerk's office, rather than by complaint and summons in regu-

lar civil action.   The time in which the statement of the grounds of contest might be filed was limited to ten days after the contestee had been declared elected.   The notice must have been .given and served within a limited time.   The judge must have at the time specified, proceeded to try the contest; and a certificate of the clerk of the district court was obliged to issue to the person declared to be elected by the court, by virtue of which certificate the person so declared to be elected was entitled to enter upon and hold office until the decision of the district court might be reversed on appeal.   The court not having jurisdiction of such statutory contests by virtue of its organization alone, they were included in such special proceedings, jurisdiction of which was conferred by the legislature.

The supreme court of California, in *Dorsey* v. *Barry*, 24 Cal. 449, held that election contests, under statutes analogous to those of Montana, were special proceedings, distinct in form and substantially different from the common-law remedy. Bliss on Code Pleading, (§ 1, note,) classes ''election contests'' as special proceedings.   So does Works on Courts and Jurisdiction (page 467.)

In *Schwartz* v. *County Court*, 14 Col. 44, 23 Pac. 84, the court said:   ''The proceedings upon an election contest before the county judge, under the statute, are special and summary in their nature; and it is a general rule that a strict observance of the statute, so far as regards the steps necessary to give jurisdiction, must be required in such cases.''

The proceeding, therefore, being special the rule is that the jurisdictional facts must appear on the face of the proceedings. (Sutherland on St. Const., § 391, and authorities cited.)

We think it plain that no one but an elector can invoke the aid of the statute cited; and, when the statute is so invoked, the party seeking its benefits must bring himself within its spirit and its letter.   The law says an elector may contest an election for county and township offices.   This excludes all others (except, perhaps, by appropriate proceedings in *quo warranto*), not electors.   For instance, one not a citizen of the

United States; one who, although a citizen of the United States, had not resided in the state of Montana and county of Dawson the required length of time; one under 21 years of age; one who had been convicted of felony, and not pardoned; a woman,—none such could contest the election of defendant or contestee, under section 1043. It was the letter and policy of the law that if the will of the people had not been correctly pronounced,—if persons declared elected had not been in fact,—electors might contest by simply following the provisions of the statute; but, on the other hand, to avoid vexatious intermeddling by those not interested in the political affairs of the county, the statute permits such contests to be instituted only by those qualified to vote themselves, and does not extend the right to any others. The person instituting such a statutory contest must therefore make it affirmatively appear by the statement that he is an elector, and thus entitled to institute the proceedings to give the court jurisdiction.

In *Edwards* v. *Knight*, 8 Ohio 375, Edwards produced in court a copy of a notice duly served upon Knight, that the election of Knight as prosecuting attorney would be contested by Edwards. Pursuant to statute, the contest was docketed, when Knight moved to quash the proceedings, assigning as cause the lack of jurisdiction in the court, and that it did not appear from the notice that Edwards was an elector or candidate. The court of common pleas quashed the proceedings. The supreme court said : "The third objection, that Edwards shows no right as candidate or elector to contest the seat, seems to us well taken. The candidate is not presumed to know all the electors in his district, and he is bound to respond to none except those who show, in the notice, the right to question, which forms the basis of the proceeding. The contestor offers proof that he was an elector, but we think the right should appear on the record. This opinion is in analogy with the settled course of decisions in this court under the bastardy act, requiring the facts that the mother is an unmarried woman, and resident in Ohio, to be set forth in the complaint."

This case is approvingly cited by McCrary on Elections (3d Ed. § 399), who says :   " Where the statute provides that the election of a public officer may be contested by 'any candidate or elector,' the person instituting such contest must aver that he is an elector, or that he was a candidate for the office in question.   This must appear on the face of the record, and it is not enough that the contestant offers proof that he is an elector.   The incumbent is not bound to answer or take notice of a complaint which does not contain this averment."

In *Schwarz* v. *County Court*, cited above, the supreme court of Colorado says :   " It provides for a written statement as the basis of the proceedings, and designates what it shall contain, and the officer with whom it shall be filed.   It designates the officer by whom the summons shall be issued, and provides the time and manner of making up the issues.   Provision is also made for fixing the time of trial, and for the form of judgment to be entered, etc.   As we have seen, the jurisdiction of the court, under such a statute, depends entirely upon the terms of the act, and consequently, before contestors can invoke such jurisdiction, facts must be stated by them which bring the cases within the purview of the act."   See, also, *Clanton* v. *Ryan*, 14 Col. 419, 24 Pac. 258.

In *Batterton* v. *Fuller* (S. D.), 60 N. W. 1071, under a statute which required the statement and notice to be embraced in one paper, called by statute "the notice of contest," it was held that such notice of contest was a jurisdictional paper, and must be sufficient upon its face to give the court jurisdiction, otherwise it was not effectual as a notice of contest, and gave the court no jurisdiction.   See, also, Paine on Elections, § 809; *Rutledge* v. *Crawford*, 91 Cal. 534, 27 Pac. 779 ; *Wright* v. *Fawcett*, 42 Tex. 203; *Vailes* v. *Brown* (Col. Sup.) 27 Pac. 945.

This omission to aver on the face of the record that contestant was or is an elector (whether in the body of the statement or in the affidavit is, perhaps, immaterial) is therefore fatal; and the court never having acquired jurisdiction by the first purported statement, filed within ten days after Dion was

declared elected, no amendment offered or made after the ten days had elapsed could give it power to act. The paper filed was not one to which Dion was obliged to give attention at all, and, the statute requiring the statement to be filed within ten days from the date of the declaration of the election of Dion being peremptory, the time cannot be enlarged by the court. (*Wilson* v. *Lucas*, 43 Mo. 290; *Bowen* v. *Hixon*, 45 Mo. 340.)

The reason given by McCrary on Elections (section 392) for placing statutory limitations upon the time within which election contests must be instituted is, that it is of the utmost importance that promptness be required in commencing and prosecuting such proceedings, in order that a decision may be reached before the term was wholly or in great part expired.

In *Vailes* v. *Brown*, heretofore cited, an election contest was dismissed because the statement of contest was not filed within the time required by the statute, and, by reason of such omission, the court acquired no jurisdiction of the case.

The contestant, Gillespie, cites us to the case of *Blanck* v. *Pausch*, 113 Ill. 60, in support of the contention that, conceding it was necessary for the contestant to aver that he was an elector, still the right to amend was properly given by the court after the ten days had expired. There is a marked difference between the statutes of Illinois and Montana. By the laws of Illinois (§ 114 *et seq.*, c. 46, Starr & C. Ann. St.) it is expressly required that the statement is to be filed with the clerk of the court, and may be verified as bills of chancery are verified. Process is to be served as provided in cases of chancery, and "the case shall be tried in like manner as cases of chancery." Construing these statutes, the supreme court held in *Dale* v. *Irvin*, 78 Ill. 171, that the proceeding had all the incidents of a regular bill in chancery, and that power to amend, therefore, existed. The Illinois decisions cannot, therefore, apply to the statutes under consideration, and we adopt the doctrine laid down by McCrary in support of the Ohio case and of the Colorado decisions, under statutes more similar to ours, believing it to be safer in principle and reason.

These views upon the question of jurisdiction lead to the conclusion that the court ought to have sustained Dion's first motion to quash the proceedings for lack of jurisdiction, and that, jurisdiction not having been obtained by a statement filed within the time limited by law for instituting the contest no amendment in this respect made after the lapse of the ten days could avail the contestant.

We are of opinion, too, that the contestant's original statement was not one specifying the grounds of contest as contemplated by the statute, and that it was insufficient to grant contestant any relief. It did not state that contestant was a candidate for the office of county treasurer. There was no averment that any ballots were unlawfully marked, or improperly or unlawfully counted. It did not set forth what the nature of the mistakes alleged to have occurred were, or whether or not such mistakes directly affected the result. It did not state the number of votes given for either of the candidates at Glendive or any other precincts in the county or plead any excuse for not making such statement; nor did it state, or attempt to state, that any electors were prevented from casting their ballots by fraud or other misconduct. "If contestor does not show that, by reason of the illegal casting or rejection of votes, the result is different from what it otherwise would have been, the contest proceeding should not be entertained." (*Todd* v. *Stewart*, 14 Col. 286, 23 Pac. 426; Paine on Elections, § 825; *Smith* v. *Harris* (Col. Sup.), 32 Pac. 616.) The mere belief of the contestant that, if the votes were recounted, it would result in showing a majority for him, does not supply the radical omissions in the statement of contest. He should have particularized the facts upon which he draws his conclusion, to the end that the court may see that, if his specifications of grounds are true, he should be granted relief.

In a recent case in Oregon ( *Whitney* v. *Blackburn*, 17 Or. 564, 21 Pac. 874), the court said of a notice and statement in an election contest as follows : "From the facts as set forth, it is manifest that they are not even reasonably or otherwise specific and certain, and that no one could be prepared to meet

charges preferred in such a general way, or, if any irregularity or illegality in fact did lie concealed behind them, to avoid being taken by surprise. The wording of the notice indicates, as was asserted at the argument, that the plaintiff did not know of a single error or illegal vote cast, but states the facts broadly and generally, because he was unable to point out, or to be reasonably specific and certain as to any count in his notice, or as to any irregularity or illegality of whatever kind, upon which to rely, or other facts to sustain his claim. * * * While it is the duty of courts to disregard mere technical rules or defects, and to liberally construe the law, that the rights of the people may be preserved, and that no protection may be afforded to fraud, yet he who undertakes to contest the right of another to an office to which he has been declared to be elected, by a tribunal chosen by the people, ought to have some well-defined ' cause,' and to be able to state it with sufficient certainty as to notify or inform the other party of the substance of the facts upon which he relies to defeat his title, and to authorize the court to make the inquiry.''

Doubtless, amendments may be made to a statement sufficiently good to enable the proceeding to be considered, provided such amendments do not essentially change the grounds of the contest, or set forth grounds where none were originally stated; but, where the amendments are so radical as to virtually initiate a contest where really no grounds at all have been specified in the original statement, we are inclined to hold they ought not to be permitted after the ten days allowed by law for commencing proceedings have expired. (*Batterton* v. *Fuller, supra.*)

A dissatisfied elector should be vigilant. Under a statute that requires a specific statement to be filed, an elector ought scarcely to be allowed to file a general objection without specific grounds of contest within ten days after the election result is declared, and thereafter to file his specifications based upon grounds perchance discovered after the lapse of ten days after the contest was instituted.

In *Heyfron* v. *Mahoney*, 9 Mont. 497, cited by plaintiff (contestant), the transcript shows very full and explicit statements in relation to the various precincts where it was alleged by contestant that illegal votes were cast. The names of the alleged illegal voters were given at great length, and the exact canvass was set forth in detail. Upon the trial, Heyfron was allowed to amend by correcting certain voting lists, by altering the spelling of the names of certain persons, and by adding the names of other persons to such lists, which did not affect the judgment in the case, upon the principle that immaterial defects in pleadings in election cases should be disregarded, that the ends of justice might be promoted. But that was a statement very different from the paper called a "statement" in this case. Here the contestant is making a good statement out of nothing.

But for lack of jurisdiction, heretofore discussed, the judgment is reversed, and the proceeding dismissed.

PEMBERTON, C. J., concurs.

*Reversed.*

[Submitted April 7, 1896. Decided May 4, 1896.]