HAWAIIAN AIRLINES, INC., a Hawaii corporation, and ALOHA AIRLINES, INC., a Hawaii corporation, Plaintiffs, *v.* STATE OF HAWAII DEPARTMENT OF TAXATION and HERBERT M. DIAS, in his capacity as Director of Taxation of the State of Hawaii, Defendants

NO. 10350

MARCH 24, 1986

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

The questions posed by this original proceeding[1] are whether the five-year limitation period prescribed by Hawaii Revised Statutes (HRS) § 231-23(b) or the three-year limit in HRS § 235-111(a) applies to claims for the refund of taxes paid pursuant to HRS § 239-6 and how the pertinent statute should be applied to the claim filed by Hawaiian Airlines, Inc. on September 15, 1978. Concluding that the three-year statute applies, we hold the airline is entitled to recover payments made on September 20, 1975 and December 19, 1975.

I.

Inter-island air carriers were made subject to taxation under the Public Service Company Tax in 1963 when the legislature decreed that "[t]here shall be levied and assessed upon each airline a tax of four per cent of its gross income each year from the airline business." See S.L.H. 1963, c. 147, § 2(a) and HRS § 239-6. But in enacting the Airport Development Acceleration Act in 1973, Congress proscribed the levy or collection by any state of a tax on the gross receipts derived from the sale of air transportation. See Pub. L. No. 93-44, § 7(a), 87 Stat. 88, 90 (subsequently codified as 49 U.S.C. § 1513(a)).

Hawaiian perceived no inconsistency between the federal and State enactments and continued to file returns and pay the tax until 1978. Following the lead of Aloha Airlines, Inc., however, Hawaiian filed amended returns for 1973, 1974, 1975, and 1976, as well as its return for

---

[1] HRS § 602-5(3) gives us discretionary authority "[t]o entertain ... any case submitted without suit when there is a question in difference which might be the subject of a civil action or proceeding in the supreme court, circuit court, or tax appeal court, and the parties agree upon a case containing the facts upon which the controversy depends[.]"
Thus, Rule 14 of the Hawaii Rules of Appellate Procedure provides:
Parties to a dispute which might be the subject of a civil action or proceeding addressed to the jurisdiction of the Hawaii appellate court, circuit court, district court, family court, land court, or tax appeal court may, without action, agree upon containing the facts upon which the controversy depends, a statement of the question or questions in difference, the contentions of the parties, and the form of judgment to be rendered.
Hawaiian Airlines, Inc. and the Director of Taxation submitted an agreed statement of facts to this court in lieu of proceeding before the Tax Appeal Court.

the 1977 calendar year, in 1978, asserting there was an irreconcilable and fatal conflict between the federal and State statutes. Hawaiian's refund claims, as well as Aloha's, were summarily rejected by the Director of Taxation, and he assessed Hawaiian in accord with HRS § 239-6 for 1977. Aloha and Hawaiian appealed to the Tax Appeal Court, where the thesis that HRS § 239-6 had been invalidated by the federal enactment suffered a similar fate.

The airlines then appealed to this court, reiterating the preemption argument advanced below. We reviewed the relevant provisions of the federal and State statutes and found "[t]he legislature ha[d] deemed the State levy 'a means of taxing the personal property of the airline or other carrier, tangible and intangible, including going concern value.' HRS § 239-6." *In re Aloha Airlines, Inc. and Hawaiian Airlines, Inc.*, 65 Haw. 1, 17, 647 P.2d 263, 274 (1982). And we concluded the tax therefore was one that had been placed beyond the preemptive reach of 49 U.S.C. § 1513(a) by § 1513(b).[2]

The Supreme Court, however, found our analysis unacceptable and concluded "the Hawaii tax is preempted." *Aloha Airlines, Inc. v. Director of Taxation,* 464 U.S. 7, 8 (1983). The judgment rendered by this court was reversed, and the tax appeals of Aloha Airlines and Hawaiian Airlines were remanded for further proceedings. The dispute between Aloha and the Director of Taxation has been settled, and Hawaiian and the Director have agreed to submit what remains of their dispute directly to this court upon an agreed statement of facts. *See supra* note 1.

---

[2]49 U.S.C. § 1513(a) in pertinent part reads:

(a) No State . . . shall levy or collect a tax, fee, head charge, or other charge, directly or indirectly, on persons traveling in air commerce or on the carriage of persons traveling in air commerce or on the sale of air transportation or on the gross receipts derived therefrom.

§ 1513(b) in pertinent part reads:

(b) [N]othing in this section shall prohibit a State . . . from the levy or collection of taxes other than those enumerated in subsection (a) of this section, including property taxes, net income taxes, franchise taxes, and sales or use taxes on the sale of goods or services.

## II.

The primary question remaining for resolution is whether or not the claims for refund of taxes paid in 1974 and 1975 are time-barred. Our task here is complicated by the absence of language relating to refunds in the Public Service Company Tax Law. But Hawaiian views the five-year limitation in HRS § 231-23(b) as controlling and maintains it is entitled to the refund of payments made in the foregoing years since its amended returns were filed on September 15, 1978, and the Director insists the situation at hand is governed by the three-year limit for the refund of income taxes set forth in HRS § 235-111(a). We turn initially to HRS Chapter 239 itself for possible guidance.

As we observed, HRS Chapter 239 does not declare that the passage of a given interval of time bars a claim for the refund of public service company taxes. For that matter, nothing in the chapter expressly permits taxpayers to seek refunds of taxes collected thereunder.[3] Yet, it cannot be said that these omissions have left taxpayers without recourse where such taxes have been levied in error, for

> [a]ll provisions of the laws . . . relating to . . . the rights and liabilities . . . of taxpayers . . . in connection with any matters dealt with by chapter 235, are made applicable (1) to the taxes and the assessment, payment, and collection thereof, provided by [chapter 239], and (2) to the department and director of finance in connection with such taxes and the assessment, payment, or enforcement of payment and collection thereof, and (3) to taxpayers and other persons affected by [chapter 239] . . . .

HRS § 239-7.[4]

---

[3]The Director, however, does not dispute the taxpayer's right to claim a refund.

[4]HRS § 239-7 (1976) in pertinent part reads:
 Assessments; payments; chapter 235 applicable. . . .

 .   .   .   .

 . . . All provisions of the laws, not inapplicable and not inconsistent with this chapter, relating to returns for income tax purposes, the assessment (including additional assessments), collection, and payment (in installments or otherwise) of income taxes and the powers and duties of the department and the director of finance in connection therewith, and relating to appeals from or other adjustments of such assessments, limitation periods for assessments, enforcement of attendance of witnesses, and the production of evidence, examination of witnesses and records, the effect of assessments, tax books, and lists and other official tax records as evidence,

Turning to HRS Chapter 235, the Income Tax Law, as directed by § 239-7, we note "[c]redits and refunds" are covered by § 235-110[5] and "[l]imitation period[s] for assessment, levy, collection, or credit" are set out in § 235-111.[6] We think the relevant provisions vindicate the position of the Director that the applicable limitation period is three years.

The provisions of HRS § 235-110(a) allowing taxpayers to seek refunds of "taxes which are discovered to have been overpaid" were added to the Income Tax Law in 1939. *See* S.L.H. 1939, c. 223, § 2 and Sen. Stand. Comm. Rep. No. 253, in 1939 Senate Journal, at 994-95.[7]

---

delinquent dates and penalties, and the rights and liabilities (civil and criminal) of taxpayers and other persons in connection with any matters dealt with by chapter 235, are made applicable (1) to the taxes and the assessment, payment, and collection thereof, provided by this chapter, and (2) to the department and director of finance in connection with such taxes and the assessment, payment, or enforcement of payment and collection thereof, and (3) to taxpayers and other persons affected by this chapter, as the case may be.

[5]HRS § 235-110(a) in relevant part reads:
(a) If the taxpayer has paid as an installment of the tax more than the amount determined to be the correct amount of such installment, the overpayment shall be credited against the unpaid installments, if any. If the amount already paid, whether or not on the basis of installments, exceeds the amount determined to be the correct amount of the tax, the amount of the credit shall be refunded . . . .

[6]HRS § 235-111(a) reads:
(a) General rule. The amount of income taxes imposed by this chapter (also the amount of income taxes imposed by any preceding law of the State) and the liability of any employer in respect of wages, shall be assessed or levied and the overpayment, if any, shall be credited within three years after filing of the final return for the taxable year, or within three years of the due date prescribed for the filing of said return, whichever is later, and no proceeding in court without assessment for the collection of such taxes or the enforcement of such liability shall be begun after the expiration of such period.

[7]The committee report accompanying the relevant measure stated in part:
Your Committee on Ways and Means, to which was referred Senate Bill No. 404, entitled: "An Act to amend Chapter 65 of the Revised Laws of Hawaii 1935, as amended by Act 120 (Series A-45) of the Session Laws of Hawaii 1935, by amending Section 2050 thereof, relating to assessments and credits, and by adding thereto a new section to be numbered 2050A, providing for refunds; and making an appropriation for a fund for such purpose," begs leave to report as follows:
The purpose of this bill is to clarify the present provisions of the income tax law with regard to taxes which are discovered to have been overpaid, and to supplement the present provisions of the law by providing that if the overpayment cannot be credited against unpaid installments of the tax it shall be refunded.
Sen. Stand. Comm. Rep. No. 253, in 1939 Senate Journal, at 994. Revised Laws of Hawaii (RLH) 1935 § 2050 was the ancestor of HRS § 235-111, and the language added by the legislature in 1939 is now part of HRS § 235-110.

Concomitantly, the section dealing with limitation periods for the assessment, levy, and collection of income taxes, RLH 1935 § 2050, as amended, was further amended to cover overpayments.[8] Though the amendatory language ( *see supra* note 8) is hardly a model of clarity and the term "refund" appears in neither the title nor text of § 235-111, Act 223 undoubtedly established a five-year limitation period on claims for the refund of income taxes, which has since been reduced to three years.

If doubt existed, it has been dispelled by subsequent legislative pronouncements on the subject. For example, when the limitation period was reduced to three years in 1969 with the enactment of S.L.H. 1969, c. 274, the pertinent committee reports stated:

> The purposes of this bill are: (1) to reduce from five to three years the period of time when taxpayers subject to the income, general excise or use tax laws are required to retain and preserve books of accounts; (2) to reduce from five to three years the period for assessment, levy, collection, or credit *or refund for* general excise and *income tax* purposes.

Sen. Stand. Comm. Rep. No. 161, in 1969 Senate Journal, at 925; Hse. Stand. Comm. Rep. No. 668, in 1969 House Journal, at 884-85 (underscoring added). And when another aspect of § 235-111 was amended in 1971, a legislative committee report couched the purpose and intent of the measure in these terms:

> The purpose of this bill is to extend the limitation period for tax assessment and refund from the present "three years after filing the final return" to a period of "three years of the due date . . ., *whichever*

---

[8]RLH 1935 § 2050(1) prior to its amendment read:

Limitation·period for assessment, levy and collection. 1. General rule. The amount of income taxes imposed by this chapter and also the amount of income taxes imposed by any preceding law of the Territory shall be assessed or levied within five years after the return was filed and no proceeding in court without assessment for the collection of any of such taxes shall be begun after the expiration of such period[.] Act 223 S.L.H. 1939 in relevant part provided as follows:

Section 1. Chapter 65 of the Revised Laws of Hawaii 1935, as amended by Act 120 (Series A-45) of the Session Laws of Hawaii 1935, is hereby further amended by amending *section 2050* thereof:

a. By amending subsection 1 thereof by inserting in the fourth line thereof, after the words "assessed or levied", the following: "and the overpayment of tax, if any, shall be credited".

(Emphasis in original).

*is later.*" (Emphasis added). Sections 235-111(a) (income tax) and 237-40(a) (excise tax) are amended accordingly.

The enactment of these provisions is designed to encourage filing of returns prior to the due date, as the time allowed for amending returns and filing for refunds in the event of overpayment will be identical with those taxpayers filing on the due date. The need for date stamping all returns filed before the due date will thereby also be eliminated.

Hse. Stand. Comm. Rep. No. 75, in 1971 House Journal, at 709. Thus, we find no merit in the taxpayer's thesis that HRS Chapter 235 is silent where refunds are concerned and the five-year limitation period in § 231-23(b) is controlling.[9]

III.

Our conclusion that the pertinent limitation period is three years disposes of the airline's claim for a refund of taxes paid in 1974. But it does not settle the matter of Hawaiian's entitlement to sums paid in 1975, which turns on the reading to be given HRS §§ 239-7 and 235-111(a). The question confronting us here is whether all, some, or none of the amounts "overpaid"[10] in 1975 should be refunded. The Director maintains the total amount of the tax imposed by chapter 239 for the year was due on January 1 and payable on April 20. Since the amended return was submitted on September 15, 1978, Hawaiian, he argues, is not entitled to a refund of anything. Hawaiian contends it should be refunded the taxes paid with respect to the last two quarters of 1975 if the three-year statute controls. The Director's position is untenable, and we agree that Hawaiian's refund claim effectively covered the payments made on September 20, 1975 and December 19, 1975.

---

[9]HRS § 231-23(b) applies "to all taxes except those collected under chapters 246 and 247 and those collected under a chapter containing a provision for credit and refund of the amount of tax paid in excess of the tax imposed by such chapter." Since HRS § 239-7 provides that "[a]ll provisions of the laws . . . relating to . . the rights and liabilities . . . of taxpayers . . . in connection with any matters dealt with by Chapter 235, are . . . applicable . . . to taxpayers . . . affected by [chapter 239]," HRS § 231-23(b) does not apply to taxes collected under chapter 239.

[10]For present purposes the crucial term in HRS § 235-111(a) is "overpayment."

## A.

There is language, to be sure, in HRS § 239-7 supporting the Director's position. Yet we do not deem it dispositive, for we have eschewed the notion that meaning is to be gleaned from a single word or sentence in a statute. Statutory language, we have said repeatedly, "must be read in the context of the entire statute and construed in a manner consistent with the purposes of the statutes. *Pacific Insurance Co. v. Oregon Automobile Insurance Co.,* 53 Haw. 208, 490 P.2d 899 (1971); *State v. Ogata,* 58 Haw. 514, 572 P.2d 1222 (1977)." *State v. Sylva,* 61 Haw. 385, 388, 605 P.2d 496, 498 (1980).

The opening sentence of the second paragraph of HRS § 239-7 expressly provides "[t]he total amount of the tax imposed by [chapter 239] shall be due on January 1 and payable on April 20 in each year." Read in isolation the sentence clearly supports the Director's position; it rendered the total amount of the tax payable on April 20, 1975, and the claim for refund was made more than three years thereafter. But the succeeding sentence provides that an airline "may elect to pay the tax in four equal installments, in which case the first installment shall be paid on April 20, and the second, third, and fourth installments on June 20, September 20, and December 20, respectively." Hawaiian chose to meet its tax obligation under this provision as allowed.

That the first sentence could not have been meant for literal application is obvious. A strict reading would deprive the next sentence of meaning and effect, and we have said a provision is not to be read strictly where the result would be the emasculation or deletion of another. *Hawaii Carpenters' Trust Funds v. Aloe Development Corp.,* 63 Haw. 566, 574, 633 P.2d 1106, 1111 (1981). Thus, we experience no qualms in rejecting the argument that the taxpayer is entitled to nothing.

## B.

While Hawaiian maintains an argument could be advanced for the refund of all payments made in 1975 since the amended return was submitted within three years of the filing of the last return in 1975, it asserts it is clearly entitled to a refund of the third and fourth quarterly payments. The provisions of HRS § 235-111(a), in our opinion, are anything but clear where refunds of public service company taxes are concerned. Our function here, like our earlier task, is hampered by the

lack of explicit language—the crucial term "refund" does not appear in § 235-111(a). Still, we think a reasonable construction of the subsection compels a refund of the payments made in September and December of 1975.

There was no provision in the Income Tax Law for the refund of overpayments prior to 1939. *See supra* note 7. The omission was cured with the passage of S.L.H. 1939, c. 223, which added the basic language of what is presently codified as HRS § 235-110(a) to the law. Though it wrote new language to establish a right to refunds, the legislature chose the expedient of a slight alteration of an existing subsection, presently § 235-111(a), to set the period within which the right could be exercised. *See supra* note 8. Act 223 thus also amended the section setting forth limitation periods for the assessment, levy, and collection of income taxes, now codified as § 235-111(a), "by inserting . . . after the words 'assessed or levied,' the following: 'and the overpayment of tax, if any, shall be credited.' "

The language of the subsection as amended above appears clear enough upon cursory review. Yet when put to a test of application in the situation at hand, the language, we find, is rife with uncertainty. Taken at face value, it lends itself to two readings with disparate consequences. Inasmuch as it speaks of a "final return" and "due date" and the tax imposed by chapter 239 is "due on January 1 and payable on April 20 in each year," § 235-111(a) can be read to declare untimely the claim for refund of 1975 taxes submitted on September 15, 1978. This would mean Hawaiian's right to seek a refund could only have been exercised within two years and four months after the last quarterly payment made in 1975. If we were to deem the copy of the 1975 return submitted by Hawaiian with the last quarterly payment the final return for the year as Hawaiian suggests is possible, the amended return would then recapture taxes paid three years and five months earlier.

We have gathered from other authoritative sources, however, that the legislature intended to enact a five-year statute of limitations (now shortened to three years), not one nearly a year shorter nor one half a year longer. *See* Sen. Stand. Comm. Rep. No. 161, *supra;* Hse. Stand. Comm. Rep. No. 668, *supra;* Hse. Stand. Comm. Rep. No. 75, *supra.* "It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." *Holy Trinity Church v. United States,* 143 U.S. 457, 459 (1892) (quoted in *Montalvo v. Chang,* 64 Haw. 345, 356 n.12,

641 P.2d 1321, 1329 n.12 (1982)); *G.J. Hawaii, Ltd. v. Waipouli Development Co.,* 57 Haw. 557, 562, 560 P.2d 490, 493 (1977). The most desirable interpretation of a statute is, of course, one consistent with both its letter and spirit. Yet when the words have not captured intent and purpose, a construction departing from the letter of the law is justified. *Chang v. Meagher,* 40 Haw. 96, 102 (1953). Given the circumstances, we believe HRS § 235-111(a) should be construed to mean that the three-year limitation period for the filing of refund claims runs from the due date of any quarterly payment if the law allows a taxpayer to meet his obligation through such payments and he has elected to do so.

The Director of Taxation is ordered to refund the sums paid by Hawaiian Airlines, Inc. on September 20, 1975 and December 19, 1975, with interest as allowed by law.

*Michael Shea (Martin Anderson, H. Mitchell D'Olier,* and *Warren Price, III* with him on the briefs; *Goodsill, Anderson, Quinn & Stifel,* of counsel) for Plaintiff Hawaiian Airlines, Inc.

*Kevin T. Wakayama,* Deputy Attorney General, for Defendant Director of Taxation.